# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| SHARIF KELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:21-cv-00377** |
| | ) | **Judge Aleta A. Trauger** |
| METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE AND DAVIDSON | ) | |
| COUNTY, d/b/a DAVIDSON COUNTY | ) | |
| SHERIFF'S OFFICE; DARON HALL, in | ) | |
| his official capacity; TONY M. WILKES, | ) | |
| in his official capacity; BRYAN NOVAK, | ) | |
| individually and in his official capacity; | ) | |
| CHRISTOPHER DANCKWERTH, | ) | |
| individually and in his official capacity; | ) | |
| and DWAYNE BUTLER, individually | ) | |
| and in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Before the court are (1) the Rule 12(b)(6) Motion to Dismiss filed by defendants Bryan Novak and Christopher Danckwerth (collectively, the "individual defendants") (Doc. No. 24); and (2) the Motion to Dismiss filed by defendant the Metropolitan Government of Nashville and Davidson County ("Metro") d/b/a the Davidson County Sheriff's Office ("DCSO") (Doc. No. 26). For the reasons set forth herein, the individual defendants' Motion to Dismiss will be granted in part and denied in part, and Metro's Motion to Dismiss will be denied.

## I.    STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d

471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## II.   FACTS AND PROCEDURAL HISTORY

Plaintiff Sharif Keller's original Complaint, filed on May 10, 2021, asserted claims under 42 U.S.C. § 1983 against Metro and against Novak, Danckwerth, and "Derek Butler"[1] for the use

---

[1] Although a defendant identified as "Derek" Butler was named in the original Complaint, the Amended Complaint corrected this name, identifying the defendant as "Dwayne" Butler in the Amended Complaint. (*See* Doc. No. 21.)

of excessive force, malicious prosecution, and conspiracy to violate the plaintiff's constitutional rights, and state law claims for false arrest, false imprisonment, violation of the Tennessee Constitution, and civil conspiracy. (Doc. No. 1.) These claims relate to an incident that allegedly occurred on May 8, 2020, more than a year prior to the filing of the Complaint. In response to the Complaint, Metro filed a Motion to Dismiss, and Danckwerth and Novak filed Answers.[2] The plaintiff filed an Amended Complaint (Doc. No. 21) under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, and the court denied as moot Metro's first Motion to Dismiss.

The Amended Complaint alleges that Keller was arrested on April 24, 2020 and placed in the custody of the DCSO at the Correctional Development Center – Male ("CDM"), a facility operated by the DCSO. (Doc. No. 21 ¶¶ 21, 28–29.) On May 8, 2020, while "in line to be released from CDM" following the dismissal of the charges against him, Keller was instructed by defendant Christopher Danckwerth, a DCSO officer and deputy sheriff, to exit the facility door and stand against the wall. (*Id.* ¶¶ 24, 30, 31, 33, 66.) According to the plaintiff, Danckwerth did this "in order to act out on Plaintiff, in the presence of other detainees, a 'lesson' following another inmate's perceived insubordination." (*Id.* ¶ 34.) Keller alleges that he immediately complied with Danckwerth's directive, but, while he was in the process of doing so, Danckwerth shoved him against the wall. (*Id.* ¶ 35.) Then, while Keller was "immobilized, restrained, and in a defenseless position," Bryan Novak, also a DCSO officer and deputy sheriff, unnecessarily deployed chemical spray "directly in [Keller's] eyes." (*Id.* ¶¶ 37, 38, 66.) Keller alleges that Danckwerth then intentionally wrapped his leg around the plaintiff's leg and, using his own body weight, "threw Plaintiff, face first, to the hard, tiled floor," causing multiple injuries, including "lacerations to the

---

[2] The individual defendants' Answer asserted the statute of limitations as an affirmative defense.

right eye, back pain, neck pain, contusions to the scalp and pain to the left hand." (*Id.* ¶¶ 39–41.) Danckwerth and Novak then allegedly held Keller on the ground, bleeding, before relocating him to a holding cell to await medical treatment. (*Id.* ¶¶ 43–45.) The plaintiff does not state how long he was required to wait for medical treatment. He does allege that, throughout this encounter, he never refused to obey the officers' instructions, nor did he strike or threaten to harm them. (*Id.* ¶¶ 46-50.) Keller specifically asserts that Danckwerth and Novak "were not justified in their use of force or the amount of force that was used against [him]" and that the force used was "objectively unreasonable and excessive and violated clearly established law." (*Id.* ¶¶ 51, 52; *see also id.* ¶ 53.)

The plaintiff asserts that Metro was "responsible for the training" of all DCSO officers in the "proper use of force in the performance of their duties." (*Id.* ¶ 56.) He alleges that Danckwerth and Novak were trained by Metro, through defendants Sheriff Daron Hall, Chief of Corrections Tony M. Wilkes, and Officer Dwayne Butler, "in the use of force in accordance with the statutes, ordinances, regulations, customs and usages for Defendant [Metro] and the State of Tennessee." (*Id.* ¶¶ 64, 65.)

Keller next alleges that, with the knowledge and approval of Dwayne Butler, their direct supervisor, Danckwerth and Novak filed "false disciplinary charges" against Keller to cover up their unlawful conduct. (*Id.* ¶¶ 68, 70.) It is not clear when these charges were filed or when the plaintiff became aware of them. According to the Amended Complaint, the Disciplinary Incident Reports filed by Danckwerth and Novak and approved by defendant Butler and others include numerous false statements regarding the plaintiff's conduct that are directly contradicted by eyewitness testimony and surveillance video. (*Id.* ¶¶ 72–90.) Keller alleges "upon information and belief" that a hearing was held on the disciplinary charges against him, following which all charges against Keller were dismissed. (*Id.* ¶¶ 91–92.)

The plaintiff asserts that Danckwerth and Novak at all times were "acting under the color of the statutes, ordinance, regulations, customs, and usages" of Metro and "by virtue of and under the authority of their office as Deputy Sheriffs." (*Id.* ¶ 93.)

Under the caption "Claims Asserted Against Metropolitan Government / Davidson County Sheriff's Office, and in the Official Capacities of Hall, Wilkes, Butler, Danckwerth and Novak," the plaintiff asserts that Sheriff Hall and Chief Wilkes are responsible for the lawful operation of the CDM, that they owe a duty of safety to all inmates and pretrial detainees at CDM, and that they are responsible for adopting customs and policies that do not cause violations of inmates' constitutional rights. The plaintiff states that Metro, and Hall and Wilkes in their official capacity, "breached their duty to Plaintiff when they instituted, permitted, encouraged and allowed policies where officers are permitted to use force, and excessive force, in interactions with inmates" and that the DCSO's "force policy" is a "policy of deliberate indifference." (*Id.* ¶ 105.) More specifically, the plaintiff alleges that the policy instituted by Metro, Hall, and Wilkes "purportedly restricts the use of physical force to 'instances of justifiable self-defense, protection of others, protection of property, and prevention of escapes, and then only when there is no other reasonable option and in accordance with appropriate statutory authority,'" but then contains "an overly broad definition of 'use of force' that reflects the broad application of force that is regularly implemented and condoned by the Defendants." (*id.* ¶¶ 106, 107 (quoting DCSO Policy #1-1.455).)

Keller alleges that Metro has also adopted a policy that permits a "Calculated Use of Force" against inmates who are "isolated" and present "no immediate direct threat to others." (*Id.* ¶¶ 108, 109 (citing DCSO Policy #1-1.455).) The plaintiff further asserts that this policy grants officers at DCSO unfettered discretion in using force against inmates unnecessarily and punitively, including when inmates are engaged in, or perceived to be engaged in, "passive resistance." (*Id.* ¶ 111.)

He claims that Metro has adopted a policy formally permitting the use of chemical spray and other devices whenever "negotiations have failed or found to be impractical." (*Id.* ¶ 112 (quoting DCSO Policy #1-1.455).) The plaintiff objects to this policy on the grounds that it contains no criteria for determining that negotiations would be "impractical" and thus creates "unrestricted discretion" for officers to use chemical sprays "at will, including for punitive purposes," in violation of inmates' constitutional rights. (*Id.*)

The plaintiff alleges that Metro, Hall and Wilkes have adopted a policy that authorizes the "immediate" use of force against an inmate if the inmate's conduct "constitutes an immediate serious threat . . . to institutional security and good order," that these latter terms are not defined, again giving officers unfettered discretion in the "immediate" use of force against inmates "at will, including for punitive purposes" in violation of the inmates' constitutional rights. (*Id.* ¶ 113.)

The plaintiff claims that Danckwerth and Novak operated "consistently" with DCSO policies when they "escalated a nonviolent, nonthreatening incident with the Plaintiff to a serious violent encounter that resulted in severe personal injuries to the Plaintiff." (*Id.* ¶ 115.)

The plaintiff alleges that Metro, Hall, and Wilkes exhibited deliberate indifference when they failed to train their staff to properly use force in handling or disciplining inmates and instead "adopted a custom and/or condoned and/or ratified a custom of punishing inmates . . . for their negative or undesirable behavior" and failing to protect inmates and detainees from the use of excessive force. (*Id.* ¶ 117.) The plaintiff also references numerous other incidents from 2010 through 2018 in which DCSO inmates accused of minor disciplinary infractions were subjected to the use of excessive and disproportionate force by DCSO officers responding to the incidents, resulting in serious injuries to the inmates. (*Id.* ¶¶ 119–27.) The plaintiff asserts that these past incidents are "evidence of the DCSO custom of violence and excessive force" and that Metro did

not alter or improve its policies following these incidents. (*See, e.g.*, *id.* ¶ 120.) The plaintiff alleges that, as a result of these previous incidents, Danckwerth and Novak used excessive force against the plaintiff while believing that their actions would be accepted and tolerated by the DCSO and, in fact, were never punished for their use of excessive force, because their conduct did not actually violate DCSO policy. (*Id.* ¶ 131.) Finally, the plaintiff alleges that defendants Hall, Wilkes, and Butler "condoned" the actions of Danckwerth and Novak. (*Id.* ¶ 117.)

The plaintiff alleges that, as a result of the actions of all of the defendants, he suffered "substantial physical and serious psychological injury to his body and mind," including "paralysis, post-traumatic stress disorder, and depression," as well as pain, suffering, and medical expenses. (*Id.* ¶¶ 137, 140.)

In addition to his claims under § 1983, the plaintiff brings a separate claim against Metro under the so-called "Sheriff's Statute," Tenn. Code Ann. § 8-8-302. (*Id.* at 27). Based on the same facts, the plaintiff also asserts a claim against Danckwerth and Novak in their individual capacities under § 1983 for malicious prosecution and state law claims of negligence, false arrest, false imprisonment, intentional infliction of emotional distress, and assault and battery. (*Id.* at 27–30.)

On October 1, 2021, Danckwerth and Novak filed their joint Motion to Dismiss and Metro filed its separate Motion to Dismiss, both with supporting Memoranda.[3] (Doc. Nos. 24, 25, 26, 27.) The plaintiff has filed a Response in opposition to each motion, arguing that his claims should not be dismissed and, in the alternative, that he should be permitted to amend his pleading a second time. (Doc. Nos. 30, 31.) The defendants have filed Reply briefs. (Doc. Nos. 34, 35.)

---

[3] Defendant Dwayne Butler, who, like Danckwerth and Novak, is sued in both his individual and official capacity, has never entered an appearance or responded to the Amended Complaint. However, it also does not appear that a summons was ever issued for him or that he has been properly served in this action.

### III.     DANCKWERTH'S AND NOVAK'S MOTION TO DISMISS

Danckwerth and Novak argue that: (1) the official capacity claim against them under 42 U.S.C. § 1983 should be dismissed as duplicative of the claim against Metro; (2) the malicious prosecution claim, also raised under § 1983, is subject to dismissal because the plaintiff has not alleged that the disciplinary charges against him resulted in any additional deprivation of liberty beyond his initial incarceration; (3) the Amended Complaint fails to plead sufficient facts to support the claims for negligence, false arrest, false imprisonment, and infliction of emotional distress; and (4) if the plaintiff's federal claims against these defendants are dismissed, the court should decline to exercise supplemental jurisdiction over the sole remaining state law claim for assault and battery.[4]

#### A.     Official Capacity Claims Under § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) that deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983. That said, a § 1983 suit against a government official in his official capacity is "not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464,

---

[4] Claims brought in Tennessee for false imprisonment, malicious prosecution, violation of the federal civil rights statutes, and other personal injuries are subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104(a)(1). The limitation period begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). A statute of limitations affirmative defense is generally waived if not raised in a responsive pleading, Fed. R. Civ. P. 8, but the failure to raise it in a pre-pleading motion to dismiss does not result in waiver, Fed. R. Civ. P. 12(b). However, because all of the plaintiff's claims (except potentially the malicious prosecution claim) appear from the face of the Complaint and Amended Complaint to be barred by the statute of limitations, it is unclear why neither the individual defendants nor Metro raised this as a ground for dismissal in their motions.

471 (1985)); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, (1974), in support of the first proposition; quoting *Monell v. N.Y.C. Dep't of Soc. Servs*, 436 U.S. 658, 690, n.55(1978), for the second)). Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166.

Consequently, when a § 1983 complaint asserts a claim against a municipal entity and a municipal official in her official capacity, federal courts will typically dismiss the official-capacity claim. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996) (affirming district court's dismissal of official capacity claims); *accord Direct Constr. Servs., LLC v. City of Detroit*, No. 18-CV-12356, 2019 WL 1897128, at *6 (E.D. Mich. Apr. 29, 2019) ("Courts within the Sixth Circuit consistently affirm the dismissal of official-capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself." (collecting cases)). On this basis, the court will grant the individual defendants' Motion to Dismiss, insofar as it seeks dismissal of the official capacity §1983 claim against them based on the use of excessive force.

However, in granting this portion of the individual defendants' motion, the court notes that it is apparent from the plaintiff's Amended Complaint and his Response to the individual defendants' Motion to Dismiss that plaintiff's counsel has confused the concepts of "official capacity," for purposes of asserting official capacity claims under § 1983, and the "color of law" element of an individual capacity claim under § 1983. The *facts* set forth in the Amended

Complaint very clearly would give rise to a claim against Danckwerth and Novak in each defendant's *individual capacity*, while acting under color of law, for the use of excessive force in violation of the plaintiff's constitutional rights. The dismissal of this claim, therefore, will be without prejudice to the plaintiff's ability to file a motion to amend his pleading again to assert individual capacity claims against the individual defendants under § 1983—but also without prejudice to the defendants' ability to oppose such a motion as futile, insofar as the claim may be barred by the statute of limitations.

### B. Malicious Prosecution Claim

In the Sixth Circuit, the elements of a malicious prosecution claim under the Fourth Amendment are that (1) "a criminal prosecution was initiated against the plaintiff"; (2) "the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute'"; (3) "there was a lack of probable cause for the criminal prosecution"; (4) "'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty' . . . apart from the initial seizure"; and (5) "the criminal proceeding must have been resolved in the plaintiff's favor." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)) (alterations in the original). The Sixth Circuit has also expressly recognized a "subset" of malicious prosecution claims involving continued detention, as distinct from an initial detention: "[T]he § 1983 version of malicious prosecution is not limited to the institution of proceedings; it can also support a claim for continued detention without probable cause." *Id.*

The Amended Complaint purports to state a malicious prosecution claim against Danckwerth and Novak (and Butler) in each defendant's individual capacity. (Doc. No. 21, at 30.) The claim is premised upon the individual defendants' filing of "false disciplinary charges" against Keller and the dismissal of these proceedings in the plaintiff's favor. It is unclear how the plaintiff knew about these disciplinary charges or what effect they had on him, as he alleges only "upon

information and belief" that a hearing was held and that the charges were dismissed in his favor. (*Id.* ¶¶ 91, 92.) The individual defendants appear to argue that this claim should be dismissed both for failure to state a claim for which relief may be granted and because they are entitled to qualified immunity as to this claim. (Doc. No. 25, at 8–9.) More specifically, they argue that the claim must be dismissed because Keller "has not alleged that the disciplinary charges against him caused an additional deprivation of liberty beyond his initial incarceration." (*Id.* at 4.)

The plaintiff does not respond to this argument. Upon review of the Amended Complaint, the court finds that the plaintiff does not allege any facts that give rise to a reasonable inference that he suffered prolonged or continued detention arising from the disciplinary proceedings against him, as opposed to any prolonged detention that may have been related to the false arrest. In fact, it appears from the Amended Complaint that the disciplinary proceedings may have taken place entirely in the plaintiff's absence, since he expresses a lack of direct knowledge regarding the hearing and the dismissal of the charges against him. The allegations in the pleading fail to "demonstrate more than a 'sheer possibility'" that the plaintiff experienced prolonged detention or any other injury arising from the disciplinary proceedings against him. *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 493 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 U.S. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). The Amended Complaint, consequently, fails to state a colorable claim for malicious prosecution, and this claim is subject to dismissal for failure to state a claim for which relief may be granted. Because it is not clear that the plaintiff would not be able to allege sufficient facts to support the claim, the claim will be dismissed without

prejudice.[5]

**C.    State Law Claims**

*1.    Negligence*

Under Tennessee law, negligence involves the breach of a standard of care, causation, and damages. *See, e.g.*, *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). The defendants argue that courts regularly dismiss negligence claims where they are based on the same facts as an intentional tort claim. (Doc. No. 25, at 10.) In response, the plaintiff argues that the negligence claim is pleaded in the alternative to his intentional tort claims. In reply, the defendants argue that the plaintiff fails to allege facts suggesting that the defendants' actions were negligent, as opposed to intentional.

The cases on which the defendants rely, however, all considered the question of whether the negligence claims should be dismissed at the summary judgment stage. *See, e.g.*, *Trobaugh v. Melton*, No. 2:15-CV-00005, 2016 WL 3031610, at *7 (M.D. Tenn. May 27, 2016) ("[A] negligence claim *cannot survive summary judgment* when a plaintiff 'does not point . . . to any evidence of any particular act of negligence unrelated to the intentional torts of the police officers.'" (quoting *Evans v. City of Etowah*, No. 1:06-CV-252, 2008 WL 918515, at *5 (E.D. Tenn. Apr. 3, 2008), *aff'd in part sub nom. Evans v. City of Etowah*, Tenn., 312 F. App'x 767, (6th Cir. 2009)) (emphasis added). At this stage, however, prior to discovery, the plaintiff should be permitted to plead in the alternative. His factual allegations suggest that the defendants breached

---

[5] The defendants' qualified immunity argument is premised upon the proposition that there is no clearly established law that "would have put [them] on notice that they could be held liable for malicious prosecution where the charges at issue resulted in no additional deprivation of liberty for Plaintiff who was already incarcerated." (Doc. No. 25, at 9.) In fact, the law is clear that a continued deprivation of liberty would be required to state a claim. *See Mills*, 869 F.3d at 480. The defendants do not contend that they would be entitled to qualified immunity if the plaintiff were able to allege facts showing an extension of his detention as a result of the disciplinary proceeding.

a duty of care. If the plaintiff, hypothetically, were unable to prove that this breach was intentional, the facts might instead point to a negligent breach of the standard of care. The defendants are not entitled to dismissal of the negligence claim on the asserted basis at this juncture.

2.    *False Arrest and False Imprisonment*

"As under federal law, the claims of false arrest and false imprisonment are the same under Tennessee law when the alleged false imprisonment arises out of an alleged false arrest by a law-enforcement officer." *Weser v. Goodson*, 965 F.3d 507, 517 (6th Cir. 2020) (internal quotation marks and citation omitted). To succeed on a claim of "false arrest and imprisonment," the plaintiff must ultimately prove that he was unlawfully restrained against his will. *Coffee v. Peterbilt Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990); *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 54 (Tenn. Ct. App. 2013). The plaintiff here alleges that Danckwerth and Novak are liable for false arrest because they "directly and/or indirectly caused the arrest of Plaintiff and imposed an unlawful restraint upon Plaintiff's freedom of movement and liberty," and because their actions "directly and/or indirectly resulted in the intentional and prolonged detention, restraint and/or confinement of Plaintiff within fixed boundaries and against Plaintiff's will." (Doc. No. 21 ¶¶ 151, 157.) The defendants argue that these allegations establish that the plaintiff's false imprisonment claim "arises out of" the alleged false arrest claim and, as a result, the two claims should be analyzed together as a single claim for false arrest. (Doc. No. 25, at 11.) The plaintiff does not contest that proposition, and the court finds, under Tennessee law, that, within the factual context alleged here, the claims should be considered as one claim for false arrest.

The defendants argue that the false arrest should be dismissed because the Amended Complaint fails to set forth any well pleaded allegations concerning the plaintiff's purported arrest, such as when the arrest occurred, by whom, or how the defendants' conduct caused the arrest. (*Id.*

at 12.)[6] In response, the plaintiff argues that the Amended Complaint makes it clear that the defendants' restraining him and spraying him in the face with a chemical agent and then placing him in a holding cell to await medical treatment, when he was "in line to be released from the CDM," thus prolonging his detention, states a claim for false arrest against these defendants.

The court agrees. The facts in the Amended Complaint, construed in the light most favorable to the plaintiff, would be sufficient to establish that Danckwerth and Novak unlawfully restrained the plaintiff against his will and are sufficient at this juncture to state a colorable claim under Tennessee state law for false arrest.

### 3.    *Intentional Infliction of Emotional Distress*

To prove a claim for intentional infliction of emotional distress under Tennessee law, the plaintiff must establish that (1) the conduct complained of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31, 41 (Tenn. 2005). The defendants argue that the Amended Complaint fails to adequately allege that the plaintiff suffered serious mental injury. (Doc. No. 25, at 13.)

In the Amended Complaint, the plaintiff asserts under the heading "Intentional Infliction of Emotional Distress" only that the defendants' "intentional, reckless and outrageous conduct," caused him to "suffer[] severe emotional distress." (Doc. No. 21 ¶ 164.) In the body of the pleading, he elaborates only slightly, stating that the defendants' actions caused him to suffer "serious

---

[6] In a footnote, the defendants further argue that, if the false imprisonment and false arrest claims are considered separately, then they would be immune from the false imprisonment claim under the Tennessee Governmental Tort Liability Act ("TGTLA"). Because the court finds that they should not be considered separately, the court has no need to reach that argument.

psychological injury," including "post-traumatic stress disorder and depression." (*Id.* ¶ 137.) They add that, because the plaintiff failed to show the violation of a constitutional right, they are entitled to qualified immunity. The plaintiff responds by asserting that the pleading satisfies Rule 8 and *Twombly* and *Iqbal*, as it provides sufficient notice to the defendants that he suffered serious mental injury resulting from their conduct.

The court finds that the plaintiff's assertions that he suffered serious mental injury in the form of post-traumatic stress disorder and depression satisfy the pleading standard. The defendants have not established that this claims should be dismissed.[7]

### 4.    *Assault and Battery*

The only basis raised by the individual defendants for dismissal of the state law assault and battery claim is that the court should decline to exercise supplemental jurisdiction over the "only remaining claim against the Officer Defendants." (Doc. No. 25, at 14.) Because it is not the only remaining claim, and because the plaintiff might be granted leave to amend his pleading to restate his § 1983 claims, the court will not, at this juncture, decline to exercise supplemental jurisdiction over this claim.

## IV.    METRO'S MOTION TO DISMISS

The claims against Metro, under both 42 U.S.C. § 1983 and Tenn. Code Ann. § 8-8-302, appear to be premised entirely upon the alleged use of excessive force by Danckwerth and Novak. As set forth above, the Amended Complaint states that the alleged assault took place on May 8,

---

[7] The court is doubtful, however, that the conduct alleged is sufficiently "outrageous" to support such a claim, defined in Tennessee as conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997). Further, this claim, too, is subject to a one-year statute of limitations. *See Leach v. Taylor*, 124 S.W.3d 87, 91 (Tenn. 2004) ("[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations." (citing Tenn. Code Ann. § 28-3-104)).

2020, more than one year prior to the filing of the original Complaint on May 10, 2021. However, Metro has not moved for dismissal on the grounds that the claim is facially barred by the statute of limitations. Instead, it raises many much more complicated arguments as to why the claims against it should be dismissed.

### A. Section 1983

As set forth above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) that deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

A municipality or other local governmental entity is considered a "person" under the statute and may be held liable for its actions that deprived a plaintiff of his federal rights. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 694. A municipality will not be liable, however, simply because it employs the alleged unlawful actor. *See Brown*, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable under the theory of r*espondeat superior*."). Instead, "[m]unicipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citation omitted). Thus, "under § 1983, local governments are responsible only for 'their *own* illegal acts.' They are not vicariously liable . . . for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

Because municipalities do not incur *respondeat superior* liability under § 1983, to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must adequately plead a violation of his federal rights by defendants acting under color of state law and that a municipality's policy or custom caused that violation to happen. *Bright v. Gallia Cty.*, 753 F.3d 639, 660 (6th Cir. 2014)

(citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). To adequately plead that a municipal policy or custom caused a constitutional violation. for purposes of stating a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

The plaintiff relies on all of these means to support his excessive force claim against Metro: (1) he points to official DCSO policies he contends are facially illegal (*see* Doc. No. 21 ¶¶ 106–09107); (2) he claims that Hall, Wilkes, and Butler, as officials with final decision making authority, "condoned the actions" of Danckwerth and Novak (*id.* ¶ 134); (3) he alleges that Metro failed to train DCSO deputies, including Danckwerth and Novak, in the proper use of force (*id.* ¶¶ 56, 64–65, 117); and (4) he claims that the DCSO had a custom of tolerance of federal rights violations, as demonstrated by the incidents the plaintiff references in the Amended Complaint in which DCSO officers were alleged to have used excessive force on inmates in DCSO custody (*id.* ¶¶ 118–27).

In its Motion to Dismiss, Metro argues that the § 1983 claim against it is inadequately pleaded and subject to dismissal, because (1) the allegedly facially illegal policy provisions the plaintiff cites, even if they were actually in effect in May 2020, are inapplicable to the plaintiff's situation and therefore could not have caused him injury; (2) the Amended Complaint contains no well pleaded factual allegations to support an alleged failure to train and protect; (3) none of the cases the plaintiff cites and relies upon as prior instances of alleged excessive force, for purposes of establishing a custom of tolerance of or acquiescence to federal rights violations, resulted in a

finding that an unconstitutional use of excess force had occurred; and (4) the alleged failure to discipline Danckwerth and Novak is not evidence of a department-wide inadequacy.

The court has reviewed the Amended Complaint in light of Metro's arguments and finds that, at this stage in the proceedings, it states a colorable municipal liability claim against Metro under 42 U.S.C. § 1983. Metro's Motion to Dismiss will be denied, but without prejudice to its ability to file another dispositive motion on statute of limitation grounds.

### B.  Tenn. Code Ann. § 8-8-302

The Sheriff's Statute provides:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office.

Tenn. Code Ann. § 8-8-302. As narrowed by the TGTLA, Tenn. Code Ann. § 29-20-205, the Sheriff's Statute imposes vicarious liability on a county for the intentional acts of its deputies. S*ee Jenkins v. Loudon Cty.*, 736 S.W.2d 603 (Tenn. 1987), *abrogated in part by Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001). The Tennessee Court of Appeals has recently reconfirmed that the statute "removes sovereign immunity for non-negligent acts or omissions of a deputy sheriff if, at the time of the injury, the deputy sheriff is 'acting by virtue of or under color of the office.'" *Haynes v. Perry Cty.*, M2020-01448-COA-R3-CV, 2022 WL 1210462, at *4 (Tenn. Ct. App. Apr. 25, 2022). Thus, if a deputy "recklessly fail[s] to perform the duties of his office," the county that employs him "could possibly be liable on this basis." *Id.* The scope of such liability is limited to an amount "not in excess of the amount of the surety bond executed for that county's sheriff pursuant to § 8-8-103." Tenn. Code Ann. § 8-8-303. Under the Sheriff's Statute, a county may, for example, be liable for a deputy's intentional assault committed when the officer is "acting by virtue of or under color of his office." *See, e.g.*, *Currie v. Haywood Cty.*, No. W2010-00453-

COA-R3CV, 2011 WL 826805, at *6 (Tenn. Ct. App. Mar. 10, 2011) (affirming trial court's finding that the defendant county was liable for a deputy sheriff's sexual assault of a 911 caller committed when he "gained access to [Plaintiff's] home through the use of his office").

In the Amended Complaint, the plaintiff asserts that Metro is "liable for the actions" of DCSO deputies under this statute. (Doc. No. 21 ¶ 2; *see also id.* ¶¶ 12, 13, 94, 143.) In its Motion to Dismiss, Metro argues that Keller cannot use § 8-8-302 to impose liability on Metro for the individual defendants' alleged violations of § 1983. (*See* Doc. No. 27, at 12 ("Plaintiff's claim against Metro fails because he cannot use a vicarious liability state statute such as the Sheriff's Statute as an 'end-run' around federal law.").)

The Sixth Circuit, indeed, has held that, to the extent § 8-8-302 can be read to impose vicarious liability on a municipality for its employees' alleged constitutional violations, the statute conflicts with § 1983 and cannot form the basis of a § 1983 lawsuit. *See, e.g.*, *Siler v. Webber*, 443 F. App'x 50, 53 (6th Cir. 2011). Clearly then, insofar as the plaintiff intends to use § 8-8-302 to impose vicarious liability on Metro under § 1983 for the individual defendants' alleged violations of the plaintiff's constitutional rights, the claim is subject to dismissal.

Metro, however, has not raised an argument regarding the operation of § 8-8-302 to impose liability on Metro for the deputy defendants' alleged violations of state law, whether reckless or intentional. Because those claims (including the assault and battery claim) have not been dismissed, the court will not, at this juncture, dismiss the claim against Metro under § 8-8-302.

## V.     CONCLUSION

For the reasons set forth herein, the court will grant in part and deny in part the individual defendants' Motion to Dismiss (Doc. No. 24) and deny Metro's Motion to Dismiss (Doc. No. 26).

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge